UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **VALDON VALENTINE** | * | **CIVIL ACTION NO. 6:15-2905** |
| **VERSUS** | * | **JUDGE REBECCA F. DOHERTY** |
| **L & L SANDBLASTING, INC. CORPORATION** | * | **MAGISTRATE JUDGE WHITEHURST** |

## REPORT AND RECOMMENDATION

Pending before me for Report and Recommendation is the Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by defendants, L&L Sandblasting, Inc. ("L&L) and The American Equity Underwriters, Inc. ("AEU"), on February 1, 2016. [rec. doc. 5]. Plaintiff, Valdon Valentine ("Valentine"), filed his opposition on February 22, 2016. [rec. doc. 9]. Defendants filed a reply on March 24, 2016. [rec. doc. 17]. Oral argument was held on April 20, 2016, after which I took the motion under advisement.

For the following reasons, I recommend that the motion [rec. doc. 5] be **GRANTED** as to Valentine's direct action claim against AEU. By separate Order, this Court has allowed Plaintiff to amend his Complaint to clarify his Jones Act claims. This Court will reserve making a recommendation regarding Defendants' Motion to Dismiss as to Plaintiff's Jones Act claims until after the Plaintiff has had an opportunity to amend his Complaint and Defendants have had an opportunity to file a supplemental memorandum if necessary.

## I. Background

Valentine filed this Complaint under the Jones Act, asserting that he was injured while working as a sandblaster for L&L, which provided services for the energy industry in the Gulf of Mexico. [Complaint, ¶¶ 1, 3].

Plaintiff alleges that he spent nearly 70% of his time working aboard a vessel leased or chartered by L&L in order to provide a work station and base for sandblasting operations. [Complaint, ¶ 6]. Additionally, he asserts that he spent more than 30% of his time working for his employer as a crew vessel member. [Complaint, ¶ 18]. As a member of the crew, he was quartered on the vessel and provided room and board during extensive work tours in the Gulf. [Complaint, ¶ 6]

Shortly before October 24, 2014, and after a several month stint working from the vessel leased by L&L, Valentine, along with co-workers and the equipment aboard the vessel, were transferred to a fixed platform owned and operated by Arena Oil & Gas ("Arena"), which was located in federal waters off the coast of Louisiana in West Cameron Block 544. [Complaint, ¶¶ 7, 8]. On October 24, 2014, Valentine was sandblasting on top of the platform when an 8-ton sand hopper exploded, causing injuries to him. [Complaint, ¶¶ 8, 9].

Following the accident, L&L provided emergency treatment at the UTMB hospital in Texas for Valentine's injuries. [Complaint, ¶ 13]. L&L and AEU initially paid longshore and harbor worker's compensation benefits to Valentine. [Complaint, ¶ 14].

However, in October of 2015, L&L and AEU refused to provide further medical treatment or maintenance benefits. [Complaint, ¶ 13].

On December 30, 2015, Valentine filed this action under the Jones Act. On February 1, 2016, L& L and AEU filed a Motion to Dismiss asserting that this Court lacks jurisdiction because Valentine's accident occurred while he was working as a sandblaster on a fixed platform located in federal waters off of Louisiana's coast; thus, the Outer Continental Shelf Lands Act ("OSCLA") and Longshore and Harbor Workers' Compensation Act ("LHWCA") apply. Alternatively, defendants argue that because Valentine is a longshoreman, L&L is immune from his negligence claims under the LHWCA. Defendants also assert that Valentine improperly asserted a direct action against AEU.

## II. Legal Standard

### A. Rule 12(b)(1)

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id*. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Id*.

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Id*.; *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. Hooks v. Landmark Industries, Inc., 797 F.3d 309, 312 (5th Cir. 2015) (citing *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss*., 143 F.3d 1006, 1010 (5th Cir. 1998)). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders*, 143 F.3d at 1010 (*quoting Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).

### B. Rule 12(b)(6)

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming,* 281 F.3d at 161. When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (*quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " *In re Katrina Breaches Litig*., 495 F.3d at 205 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974,

167 L.Ed.2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*. (*quoting Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555, 127 S.Ct. 1964-65 (citations, quotation marks, and brackets omitted). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*citing Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*.

### III. Analysis

**A. Jones Act**

Valentine filed his Complaint under the Jones Act, 46 U.S.C. § 30104, *et seq*. Valentine claims that he spent nearly 70% of his work time for L&L aboard a vessel leased or chartered by L&L which provided as a work station and base for sandblasting operations. [Complaint, ¶ 6]. Valentine further claims that he spends more than 30% of his work time for L&L aboard a vessel as a member of a crew. [Complaint, ¶ 18].

In the motion to dismiss, Defendants argue that Valentine is not a seaman because he lacks a necessary connection to a vessel or fleet of vessels. Specifically, they contend

that plaintiff had been transferred to a fixed platform prior to the time of the alleged incident. Defendants further assert that Valentine was working as a sandblaster, an employment position clearly covered by the LHWCA. Defendants rely on *Davis v. Cargill*, 808 F.2d. 361 (5th Cir. 1986) for the proposition that painters and sandblasters are workers covered under the LHWCA. Finally, Defendants argue that Valentine has asserted no vessel negligence in his complaint.

The Jones Act provides a cause of action permitting unlimited damages against the negligence of a plaintiff's employer. *Becker v. Tidewater, Inc.*, 335 F.3d 376, 386-87 (5th Cir.2003), as revised (July 24, 2003) (*citing Ferguson v. Moore-McCormack Lines*, 352 U.S. 521, 522-23, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957)). A Jones Act seaman may also sue the owner of any vessel on which he is working for a breach of the warranty of seaworthiness, regardless of whether the vessel is owned by his employer. *Id*. (*citing Parks v. Dowell Div. of Dow Chem. Corp.*, 712 F.2d 154, 156-58 (5th Cir.1983)). Finally, a Jones Act seaman may also sue third parties for general maritime law negligence. *Id*. (*citing Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971)).

In contrast, the LHWCA provides a cause of action for injuries sustained by a broad range of land-based maritime workers, excluding seamen covered by the Jones Act. *Id*. (*citing Chandris, Inc. v. Latsis*, 515 U.S. 347, 356, 115 S.Ct. 2172, 132 L.Ed.2d 314 (2012)). First, the LHWCA provides a no-fault workers' compensation scheme against a

worker's employer for the death or disability of anyone engaged in maritime employment to receive medical costs, 33 U.S.C. § 907(a), prejudgment interest, *id*. § 905, and two-thirds of the worker's salary for as long as the disability persists. *Id*. § 908(a). Second, the LHWCA permits a restrictive theory of negligence against a vessel as a third party to recover damages for injuries caused by vessel negligence. 33 U.S.C. § 905(b); *Becker*, 335 F.3d at 387 (*citing Scindia Steam Nav. Co., Ltd. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981)).

While Valentine claims that he is a Jones Act seaman, defendants argue that he is actually a longshoreman. It is well-settled that the Jones Act and the LHWCA are "mutually exclusive compensation regimes." *Becker*, 335 F.3d at 386; *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 553, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997); *see also Chandris*, 515 U.S. at 359, 115 S.Ct. at 2185 (*citing McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 347, 111 S.Ct. 807, 813, 112 L.Ed.2d 866 (1991)) ("[w]ith the passage of the LHWCA, Congress established a clear distinction between land-based and sea-based maritime workers. The latter, who owe their allegiance to a vessel and not solely to a land-based employer, are seamen.").

To maintain a cause of action under the Jones Act, the plaintiff must be a seaman. Land-based workers are not seamen. *Alexander v. Express Energy Services Operation, L.P.*, 784 F.3d 1032, 1033 (5th Cir. 2015) (*citing Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 346 (5th Cir. 1999)). The key to seaman status is employment-related

connection to a vessel in navigation. *Chandris*, 515 U.S. at 357, 115 S.Ct. at 2184 (*citing Wilander*, 498 U.S. at 355, 111 S.Ct. at 817). Although "[i]t is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel, . . . a seaman must be doing the ship's work." *Id*. (*citing Wilander*, 498 U.S. at 354, 111 S.Ct. at 817). The requirement that an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission' captures well an important requirement of seaman status." *Wilander,* 498 U.S. at 355, 111 S.Ct. at 817.

An injured person claiming the benefits of the Jones Act . . . has the burden of establishing seaman status." *Becker*, 335 F.3d at 389 n. 8 (*citing Barrett v. Chevron, U.S.A., Inc*., 752 F.2d 129, 132 (5th Cir. 1985)). To determine if an individual worker is a seaman, and therefore entitled to the protections of the Jones Act, he must prove that: (1) his duties contribute to the function of the vessel or to the accomplishment of its mission, and (2) the worker must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of *both its duration and its nature* (the "substantial-connection" prong). (emphasis added). *Alexander*, 784 F.3d at 1034 (*citing Chandris*, 515 U.S. at 368, 115 S.Ct. at 2190).

The Fifth Circuit has generally declined to find seaman status where the employee spent less than 30 percent of his time aboard ship. *Wilcox v. Wild Well Control*, 794 F.3d 531, 536 (5th Cir. 2015) (*citing Barrett*, 781 F.2d 1076; *Chandris*, 515 U.S. at 367, 115 S.Ct. at 2189). The Supreme Court deemed this "an appropriate rule of thumb," but noted

that "departure from it will certainly be justified in appropriate cases." *Chandris,* 515 U.S. at 371.

The Supreme Court has articulated an exception to temporal guidelines, such as the thirty-percent benchmark. *Chandris*, 515 U.S. at 372, 115 S.Ct. 2191. An employee who has worked for years in an employer's shoreside headquarters and who is then reassigned to a ship in a classic seaman's job qualifies for seaman status even if he is injured shortly after reassignment. *Id*. A worker who has been reassigned to a land-based job, however, cannot claim seaman status based on prior service at sea. *Id*. The Court summed up this exception by noting that "[i]f a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." 515 U.S. at 372, 115 S.Ct. at 2191-92.

It is therefore well settled after decades of judicial interpretation that the Jones Act inquiry is fundamentally status based: Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore. *Chandris*, 515 U.S. at 361, 115 S.Ct. at 2186. Jones Act coverage depends "not on the place where the injury is inflicted . . . but on the nature of the seaman's service, his status as a member of the vessel, and his relationship as such to the vessel and its operation in navigable waters." *Chandris*, 515 U.S. at 359-60, 115 S.Ct. at 2185-86

(*quoting Swanson v. Marra Bros.*, 328 U.S. 1, 4, 66 S.Ct. 869, 871, 90 L.Ed. 1045 (1946)). Thus, maritime workers who obtain seaman status do not lose that protection automatically when on shore and may recover under the Jones Act whenever they are injured in the service of a vessel, regardless of whether the injury occurs on or off the ship. *Id.* Conversely, land-based maritime workers injured while on a vessel in navigation remain covered by the LHWCA, which expressly provides compensation for injuries to certain workers engaged in "maritime employment" that are incurred "upon the navigable waters of the United States." *Id*. 515 U.S. at 360, 115 S.Ct. at 2186.

In the Complaint, Valentine admits that "[s]hortly before the accident," he was "transferred to a fixed platform" which was located in federal waters off the coast of Louisiana. [Complaint, ¶ 7]. Additionally, he alleges that he was injured while sandblasting on the fixed platform. [Complaint, ¶ 8]. Further, Valentine admits that he accepted longshore and harbor worker's compensation benefits from L &L and AEU for approximately one year. [Complaint, ¶¶ 13-14].

Valentine's memorandum in opposition to defendant's motion to dismiss confirms that Valentine was "assigned" to a fixed platform in the Gulf of Mexico at the time of the accident. [rec. doc. 9, p. 1]. The memorandum further states, however, that in addition to his welding and blasting skills that Valentine put to use while employed with L&L, he was also a foreman who was in charge of running L&L's crews that were assigned to various jobs the company contracted in the Gulf and, as such, spent a significant time

working exclusively on vessels. *Id. at* p. 2. According to Valentine's memorandum, the work he performed (blasting, supervising and welding) was integral to the mission of each vessel to which he was assigned. *Id. at* p. 2. During oral argument, when questioned by the Court regarding how Valentine's work contributed to the function of a vessel and whether Valentine had been reassigned to the platform at the time of the accident, counsel for Valentine argued that, although Valentine's vessel had completed its mission, he was assigned work on a platform simply to fill his last several days of his work stint with L&L before returning to his home in Jamaica. Counsel for Valentine indicated that Valentine would have returned to a vessel, engaging in the same type of activities, when he returned to work for L & L the following March. Significantly, Valentine has never identified a particular vessel or fleet of vessels to which he was assigned at the time of the accident, nor has he made any claim of vessel negligence.

Despite the arguments made by Valentine in his memorandum in opposition to the Motion to Dismiss and at oral argument, none of those claims are contained in his Complaint. Rather, Valentine's Complaint leaves confusion as to whether Valentine had been reassigned to work as a sandblaster on a fixed platform at the time of the alleged accident which, if true, would preclude his Jones Act claim.

This Court has, by separate Order, allowed Plaintiff to amend his Complaint to clarify his claim to Jones Act status. Accordingly, this Court will reserve making a recommendation regarding Defendants' Motion to Dismiss as to Plaintiff's Jones Act

claims until after the Plaintiff has had an opportunity to amend his Complaint and Defendants have had an opportunity to file a supplemental memorandum if necessary.

**B. Direct Action Against Insurer**

In the Complaint, Valentine filed a claim against AEU, which he alleges is "a foreign insurer authorized to do and doing business in the State of Louisiana." [Complaint, ¶ 1]. He asserts that L&L and AEU had paid *longshore and harbor worker's compensation* benefits to him. (emphasis added). [Complaint, ¶ 14]. However, in October of 2015, defendants refused to provide further medical treatment or maintenance benefits to him. [Complaint, ¶ 13].

Defendants argue that plaintiff cannot state a claim against AEU under the Louisiana Direct Action Statute, LA. REV. STAT. § 22:1269 (formerly LA. REV. STAT. § 22:655). The Fifth Circuit has held that the direct action statute is inapplicable to a cause of action based upon occurrences on artificial islands or structures on the Outer Continental Shelf ("OCS"). *Nations v. Morris*, 483 F.2d 577, 590 (5th Cir. 1973); *Koesler v. Harvey Applicators, Inc.*, 416 F.Supp. 872 (E.D. La. 1976) (Louisiana direct action statute did not apply to a case involving a sandblaster injured on a fixed platform in the Outer Continental Shelf even though the cause of action was based on the Jones Act).[12]

---

[12] The Louisiana courts have allowed the application of the Direct Action Statute in a Jones Act case arising beyond the territorial limits of the state, where the policy was delivered here. *Trahan v. Gulf Crews, Inc.*, 246 So.2d 280 (La. App. 3rd Cir.), *rev'd on other grounds*, 260 La. 29, 255 So.2d 63 (1971); *Koesler*, 416 F.Supp. at 874; *Leger v. Offshore Staffing Servs. of Acadiana LLC.*, 2013 WL 6075640, at *5 (W.D. La. Nov. 18, 2013) (*citing Koesler*) (if a plaintiff is injured on a vessel whether or not it is located in Louisiana territorial waters, or on the high seas, he could invoke the Louisiana direct action statute).

In opposition, Valentine cites *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 129 S.Ct. 2581, 174 L.Ed.2d 382 (2009). There, the Supreme Court held that a seaman was entitled, as a matter of general maritime law, to seek punitive damages against his employer. That case in inapposite, however, as it involves a claim for punitive damages, rather than a direct action against the employer's insurer.

Valentine also relies on *Lovless v. Employers' Liability Assur. Corp.*, 218 F.2d 714 (5th Cir. 1955), in which the court held that a towboat deckhand who was injured while working aboard barges could file a direct action against the vessel owner's insurer. That case is also distinguishable, as it involved an action by a seaman who was injured aboard a vessel, rather than a fixed platform as in this case.

Under well-established Fifth Circuit precedent, the Louisiana direct action statute is inapplicable to causes of actions based on structures on the Outer Continental Shelf. As Valentine was injured on a fixed offshore platform in the OCS, he cannot state a claim against AEU.

Accordingly, I recommend that defendant's motion to dismiss be **GRANTED**, and that Valentine's claim against AEU be **DISMISSED**.

## IV. Conclusion

Based on the foregoing reasons, I recommend that the Motion to Dismiss [rec. doc. 5] be **GRANTED** as to Valentine's direct action claim against AEU. This Court will reserve making a recommendation regarding Defendants' Motion to Dismiss as to Plaintiff's Jones Act claims until after the Plaintiff has had an opportunity to amend his

Complaint and Defendants have had an opportunity to file a supplemental memorandum if necessary..

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF *PLAIN ERROR. DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 8th day of May, 2016, at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

14